Peck, J.,
delivered the opinion of the court:
The petitioners, Joseph W. Parish, George C. Hadley, and William L. Huse, late copartners, doing business under the name and style of J. W. Parish & Co., represent that,-on or about the first of the month of January, A. D. 1864, (the precise date they cannot state,) they entered into a contract with the United States, the latter being represented by D. L. Magruder, surgeon and medical purveyor of the department of the west, which contract was approved by the Surgeon *372 General of the United States, by which it was agreed that the petitioners should furnish all the ice that might be required in the said department during the year 1864, at sundry points on the Mississippi river, including Cairo, St. Louis, Memphis, Vicksburg, Natchez, New Orleans, and Nashville, Tennessee, at certain fixed prices. For ice delivered at New Orleans, the price to be paid was twenty-five dollars per ton.
That proposals for ice had been invited by advertisements, and the petitioners were the lowest bidders. They also allege that the contract made and entered into was an entirety, but that the Secretary of War, contrary to the wishes of petitioners, ordered the said contract to be suspended, and afterwards annulled it, when a new contract was entered into for the delivery of ice at all the points named in the first contract, except New Orleans, at which place they were not permitted to deliver.
That the ice to be delivered at New Orleans under the contract first made would have amounted to two thousand and two hundred tons, and that, by reason of the change in the contracts, the petitioners lost the profits upon the ice which, under the first contract, was to be delivered at New Orleans, which they aver would have amounted to seventy-five thousand dollars.
That Surgeon D. L. Magruder, acting under instructions from the Surgeon General, did, at Louisville, Kentucky, under date of December 4, 1863, give notice that proposals would be received at his office until the 20th of that month for furnishing ice to all the United States general hospitals at the west, including the division of the Mississippi, and the department of the gulf, upon the Mississippi and its tributaries, in such quantities as might be required for the use of the sick and wounded during the year 1864.
J. W. Parish & Co., these claimants, were the lowest bidders for the whole amount required, and their proposal was accepted.
On the thirteenth day of said December a contract was prepared and signed by Surgeon Magruder and Parish & Go., by which the latter were to furnish ice, packed, &c., for twenty different places, one of which was New Orleans, which contract it was by parole agreed was not to be binding on the United States until it should receive the approval of the Surgeon General.
The contract was forwarded to the Surgeon General for his approval, and was approved by him and despatched by mail to Magruder, but before reaching him the approval was reconsidered and the contract, by order of the Secretary at War, was recalled, and another contract, *373 substantially like it, having -different phraseology, was forwarded in its stead.
After the second contract had reached Surgeon Magruder, he was directed by the Secretary of War to erase from it the name of New Orleans, and have it executed in lieu of the first contract, which was done; but, on executing it, after the erasure had been made, Parish & Co. protested against the alteration, stating that they would lay all the facts before the officials at Washington and seek for redress, but, nevertheless, after it was executed, treated it as the only contract between the parties, and carried out their obligations under it, never delivering or offering to deliver ice at New Orleans.
Upon these facts, and the averments of the petition, a majority of the court do agree upon the following conclusions :
This record shows that the claimants were not fairly treated by the agents of the government; and had they stood upon the advantage which the first contract gave them, if it was, as they now insist, execu-tory, they might have been entitled to recover such damages as the facts would authorize. Whatever the motives which influenced the claimants — whether it was deference to the exercise of power, the pressure of necessity, or the hope of gain — it appears that they consented to the change of contracts, thereby relinquishing whatever advantage they might have gained by adhering to the contract as prima.-rily made.
Surgeon Magruder, with whom the contracts were made, was examined by claimants, and he testifies that the name of New Orleans was stricken from the contract before it was executed. Alfred Lewis, an attesting witness to the second contract, states that Parish & Hadley “ objected to the annulling of the first contract, but stated that, as they had gone so far, they would go on and fulfil the new contract to the best of their ability, but would not waive their right on their old contract, expecting to have that made satisfactory when all the facts were laid before the officials at Washington.” He says, moreover, that the second contract was substantially the same as the first, except that the words “the Department of the Gulf, and at the city of New Orleans, Louisiana, were not in it.” This witness says he cannot give the precise language the claimants used at the time, but that they “ protested to the annulling of the first contract.”
This testimony shows that the claimants well understood that the first contract was to be annulled, and that the new contract was to be substituted for it. No doubt they objected to the erasing of the name *374 of New Orleans, but preferred to accept the new contract, with tlie erasure, than to relinquish the benefits they would receive under it.
Surgeon Magruder deposes that it was distinctly understood between himself and Parish & Co., at the time of the signing of the first contract, that it was not to be binding upon the government, nor delivered until after it should receive the approval of the Surgeon General, to whom it was to be sent for examination. The contract was, therefore, to receive the concurrence of a third party before it should become obligatory, or, in other words, the agent of the Surgeon General reserved the right to have his principal approve his .acts before they should be binding.
The second contract was tendered as a substitute for the first, upon the condition that Parish & Co. would perform what it required for the compensation to be paid, and waive that which had been previously prepared, and they cannot avail themselves of the performance and repudiate the condition. They chose to perform the services required by the new contract, and received their share of the benefits; against this their protest can avail nothing. It was not like the case of a debt due upon a consideration that was past, but here the contract was subsequently to be performed, and the benefits were prospective. Nothing had been done, nor was anything due. The claimants had an alternative presented; they made their selection, and ought not now to be permitted to undo what they deliberately preferred as most beneficial to themselves.
The claimants aver that the first contract was “ an entirety,” and seek to recover because it was so. This is their own construction of the instrument; they insist that it was indivisible, and dependent one part upon the other. Of course, the substitution of another contract in its stead would cause its complete revocation, and no recourse would be left for any partial recovery under it.
It is to be observed that 'Several of the depositions offered by claimants were taken prior to the filing of the amended petition, and within nineteen days of the bringing of the suit, and are in the record irregularly.
The petition is dismissed, and judgment is for the defendants.
■Casey, C. J., dissented.